**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| HEIDI L. PETERMAN, | ) | |
| | ) | CASE NO. 1:14-cv–1127 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Heidi L. Peterman ("Peterman") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On November 1, 2011, Peterman filed an application for SSI alleging a disability onset date of January 1, 2007. (Tr. 18.) Her application was denied both initially and upon

reconsideration. *Id*. Peterman timely requested an administrative hearing. *Id*.

On February 27, 2013, an Administrative Law Judge ("ALJ") held a hearing during which Peterman, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 18.) On March 25, 2013, the ALJ found Peterman was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 26-27.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age twenty-six (26) at the time of her administrative hearing, Peterman is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Peterman has a limited education and no past relevant work. (Tr. 26.)

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Peterman established medically determinable, severe impairments, due to borderline intellectual functioning and affective disorder; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 20-21.) Peterman was determined to have a Residual Functional Capacity ("RFC") for the full range of work at all exertional levels with certain non-exertional limitations. (Tr. 24.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Peterman was not disabled. (Tr. 26-27.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than

3

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.

Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Listing 12.05*

In her first assignment of error, Peterman avers that the ALJ erred by finding that she did not meet or equal Listing 12.05(C). (ECF No. 18 at 8-12.)

At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy **all** of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 12.05(C), 20 C.F.R. Pt. 404, Subpt. P, App. 1, states, in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> ***
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or

other mental impairment imposing an additional and significant work-related limitation or function;

*Id.*[1]

Under each mental retardation listing, including Listing 12.05(C), a claimant must establish that her impairment: (1) satisfies the "diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added). If a claimant does not show that her impairment satisfies the diagnostic description for mental retardation, then she cannot be found disabled. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012); *Green v. Astrue*, 2012 U.S. Dist. LEXIS 92685 at *8 (S.D. Ohio July 5, 2012). "Plaintiff bears the burden of showing he had 'deficits in adaptive functioning' before age 22." *Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012) (*citing Foster*, 279 F.3d at 354.)

The ALJ found that Peterman met the "C" criteria, noting that she had a valid verbal, performance, or full scale IQ of 68, as well as an additional mental impairment, depression, that affected Peterman's ability to perform work activities. (Tr. 21.) Nevertheless, the ALJ found that Listing for 12.05(C) was not met because the threshold diagnostic description in the listing was not demonstrated. *Id*.

---

[1] In 2013, but not until after the ALJ's decision, the term "mental retardation" was replaced in the Code of Federal Regulations with the term "intellectual disability." *See Burbridge v. Comm'r of Soc. Sec.*, 572 Fed. App'x 412 (6th Cir. 2014). This Court will continue to use the previous terminology in effect at the time of the decision for the sake of consistency. Notably, the underlying requirements of the listings have not changed.

1. **Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning Manifested Before Age 22**

Based on the above, to satisfy Listing 12.05(C), a claimant must demonstrate: (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; **and**, (3) an additional and significant work-related limitation or function. *See, e.g., Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). In this case, the decisive issue is whether substantial evidence supports the ALJ's decision with respect to the first requirement.

The ALJ, in addressing whether Peterman had met her burden of demonstrating deficits in adaptive functioning prior to age 22, found as follows:

> The claimant alleges that she meets listing 12.05C. Although borderline intellectual functioning is a "severe" impairment, it does not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpati P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments. In terms of the requirements in paragraph C, they may be met because the claimant has a valid verbal, performance, or full scale IQ of 68 and another mental impairment imposing an additional and significant work-related limitation of function. The claimant's full scale IQ of 68 is documented in the medical evidence prior to age 22; there is a diagnosis of depression and symptoms that affect the claimant's ability to perform work activities. However, in this case, the listing is not met because the claimant has not met the threshold requirements of the listing.
>
> The claimant's mental impairment has been considered under the requirements of listing 12.05 and 12.04. Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> In this case, the claimant has not met this [sic] threshold requirements of 12.05. The claimant's school records indicate that she received some special education and was behind her same-age peers in academic performance and claimant has a

7

> valid verbal, performance, or full scale IQ of 68. However, the claimant reports that she left school when the gym teacher failed her (Exhibits lE/7-8 and 2F). Recent reports indicate that the claimant lives on her own, takes care of her needs as well as her children's' [sic] and maintains a social life. She reports that she has not [sic] problems with her daily care, that she prepares meals on a daily basis, cleans, does laundry, dishes and shops (Exhibit 5E).
>
> The claimant has sought medical treatment for depression (Exhibits 7F and 8F). The mental status assessment in those treatment records indicate that the claimant has no difficulty with concentration, judgment or attention span (id.). Additionally, the claimant's treatment record indicates that she is able to seek medical care appropriately and can take medications appropriately.
>
> The claimant's representative argues that the claimant's lack of work history indicates deficits in adaptive functioning (Exhibit 18E/3). I note that the claimant describes herself as a housewife (Exhibit 13F/28). Also, the claimant has worked in the past and she testified that her termination from those jobs related to her pregnancy and not to her inability to perform the required job activities.
>
> The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied in addition to the threshold requirements. In this case, the claimant may meet the requirement of paragraph, C, but she has not met the threshold requirements.
>
> ***
>
> In terms of the requirements in paragraph C, they may be met because the claimant has a valid verbal, performance, or full scale IQ of 68 and another mental impairment imposing an additional and significant work-related limitation of function. The claimant's full scale IQ of 68 is documented in the medical evidence prior to age 22; there is a diagnosis of depression and symptoms that affect the claimant's ability to perform work activities. However, in this case, the listing is not met because the claimant has not met the threshold requirements of the listing as discussed above.

(Tr. 21-22.)

Listing 12.05 does not define the phrase "adaptive functioning." Other courts have noted, however, that another portion of the Listings offers examples of "adaptive activities," which include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a

8

residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1); *see e.g., Wright v. Astrue*, 2013 U.S. Dist. LEXIS 26795 at **31-32 (S.D. Ohio Feb. 26, 2013). The Sixth Circuit has described deficits in adaptive functioning as follows:

> The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. *Heller v. Doe*, 509 U.S. 312, 329, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 28-29 (3d rev. ed. 1987) ("DSM-III")). To determine the definition of mental retardation under the SSA, it is appropriate to consult leading professional organizations' definitions. See 67 Fed. Reg. 20022 (2002). The American Psychiatric Association defines adaptive-skills limitations as "[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/ interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." DSM-IV-TR at 49.

*Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 677 (6th Cir. 2009); *accord Wright*, 2013 U.S. Dist. LEXIS 26795 at **31-32; *Greathouse v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 18904 (N.D. Ohio Feb. 14, 2014).

A number of recent decisions from within this Circuit have pointed out that "[n]owhere in the paragraph [discussing the diagnostic description] is it specified how severe such limitations must be to qualify." *Gethin v. Colvin*, 2014 WL 4104130 at *10 (W.D. Ky. Aug. 18, 2014); *Robinson v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 93783 (S.D. Ohio July 10, 2014) ("The plain language of Listing 12.05 does not identify how severe limitations must be to qualify as 'deficits in adaptive functioning.'") The *Gethin* and *Robinson* decisions indicate that case law from the Sixth Circuit and other federal courts suggest that a claimant must have "relatively significant deficits" to satisfy the Listing. *Id*. It seems unlikely that an individual with relatively low IQ scores, whether falling in the range of mental retardation or borderline intellectual

9

functioning, would have absolutely no deficits in adaptive functioning. As such, this Court reasons that *significant* deficits in adaptive functioning are required before the diagnostic criteria can be considered satisfied.

Peterman argues that her school records demonstrate the requisite deficits in adaptive functioning. (ECF No. 18 at 9-11.) First, Peterman focuses on her low achievement on IQ tests and the ensuing evaluation. *Id*. at 9-10. The Court finds this argument unpersuasive, as qualifying IQ scores are a separate and distinct element of Listing 12.05. If a low IQ score *per se* established significantly subaverage general intellectual functioning with deficits in adaptive functioning, the threshold criteria would be rendered redundant. The Sixth Circuit Court of Appeals recently rejected an identical argument:

> Barnett offers three rejoinders to th[e] conclusion [that D.B. did not have significantly subaverage intellectual functioning]. First, she points out that D.B.'s verbal and perceptual IQ scores of 65 and 92, respectively, place him in the first and thirtieth percentiles of his peers. These low scores, she claims, satisfy 112.05(D)'s first requirement as a matter of law. But this interpretation collapses the Listing's first requirement (significantly subaverage general intellectual functioning) into its third (an IQ score between 60 and 70). It therefore runs afoul of the interpretive canon that requires us to try to give meaning to every word in a statute or regulation. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989).
>
> This argument also contradicts our precedents, published and unpublished alike. Consider *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124 (6th Cir. 2003), a nearly identical case. The child's IQ scores in *Elam* were low enough to support a finding of mental retardation, but evaluating experts concluded that she demonstrated borderline intellectual functioning. *Id*. at 126-27. Highlighting the experts' opinions, we affirmed the denial of benefits because it was supported by substantial evidence. *Id*. at 127; *see also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675-76 (6th Cir. 2009); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007).
>
> To be clear, an ALJ may consult IQ scores in evaluating intellectual functioning. But equating a low IQ score with "significantly subaverage" intellectual

> functioning overstates the relevance of the score. The regulations make clear that, when "considering the validity of a test result, [the ALJ] should note and resolve any discrepancies between formal test results and the child's customary behavior . . . ." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00(D)(8). Barnett's invitation would replace this nuanced evaluation process with a number, and in the process would overlook a core canon of interpretation and several on-point precedents. We must decline the offer.
>
> Second, Barnett makes the more modest point that D.B.'s IQ scores are low enough to justify a finding of "significantly subaverage general intellectual functioning." App't Br. at 22- 23. But this argument enters the forbidden field of re-weighing the evidence. We must "accept the agency's factual finding[]" when it is supported by substantial evidence, even when substantial evidence could justify a different result. *Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S. Ct. 1046, 117 L. Ed. 2d 239 (1992). The ALJ's decision fell within the zone of substantial evidence.

*Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 Fed. App'x. 461, 463-464 (6th Cir. 2014);

*accord Golden v. Comm'r of Soc. Sec.*, 591 Fed. App'x 505, 506 (6th Cir. 2015) ("[claimant's] IQ scores on their own fail to establish that her intellectual functioning was significantly subaverage.")

Next, Peterman focuses on her placement in an Individualized Education Program, her poor grades in high school, and her unsuccessful attempt at obtaining her GED. (ECF No. 18 at 10-11.) However, as noted above, functional academic skills is only one component of what the American Psychiatric Association defines as adaptive-skills limitations. Moreover, the Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes*, 357 Fed. App'x at 676-77; *see also Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533, 540 (6th Cir. 2014) ("neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had

11

adaptive functioning deficits before age twenty-two."); *Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (holding that a claimant quitting school after the eighth grade with a history of special education classes was "insufficient to undermine the ALJ's conclusion" that she did not establish deficits in adaptive functioning prior to age twenty-two); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("The only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue her studies is unclear.")

The ALJ's discussion of the specific issue of deficits in adaptive functioning manifested prior to age 22 admittedly could have been more thorough.[2] Nonetheless, it is important to observe that there is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937 (N.D. Ohio Aug. 15, 2014); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012). A reviewing court may, however, "look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis." *Osborne*, 2014 U.S. Dist. LEXIS 113937 at *22.

As noted *supra*, adaptive skills refers to a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. Though not rising to the level of substantial gainful activity, the ALJ did note Peterman was able to work in the past and left employment due to pregnancy as an indication that she lacked sufficient deficits in adaptive functioning. (Tr. 22.)

---

[2] Though the discussion is lengthy, it is also somewhat redundant, as the ALJ reiterates his finding as to Listing 12.05(C) three times but with minimal depth of discussion.

12

The ALJ also emphasized Peterman's ability to take care of her own needs as well as those of her children, as an indication of daily-living skills.[3] The ALJ also noted that Peterman quit school in the tenth grade because her gym teacher failed her. (Tr. 21, *citing* Tr. 310-311.) Peterman essentially asks this Court to reweigh the evidence, and ascribe greater weight to her poor academic performance while downplaying Peterman's other adaptive skills. As noted by the Sixth Circuit in *Barnett ex rel. D.B.*, such an "argument enters the forbidden field of re-weighing the evidence. We must 'accept the agency's factual finding[]' when it is supported by substantial evidence, even when substantial evidence could justify a different result." 573 Fed. App'x at 463-464 (citations omitted). Because the ALJ's decision fell within the zone of substantial evidence, Peterman's first assignment of error is without merit.

***Step Five***

In her second assignment of error, Peterman asserts that the ALJ failed to meet his burden at Step Five of the sequential evaluation because the hypothetical posed to the VE was inaccurate. (ECF No. 18 at 12-13.)

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See*

---

[3] Peterman's argument in her reply, that her activities of daily living are irrelevant to determining her level of adaptive functioning, is not well taken. (ECF No. 20 at 2.) Peterman cites case law that stands for the proposition that minor daily activities do no establish the ability to engage in substantial gainful activity ("SGA"). *Id*. However, Peterman cites no authority for her implicit conclusion that the inability to engage in SGA is the equivalent of having significantly subaverage intellectual functioning. Indeed, the inability to engage in SGA may in some instances be based wholly on physical limitations.

13

*Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Peterman asserts that the hypothetical should have included "non-exertional limitations such as being off task or needing to be redirected in tasks." *Id*. at 12. In support, Peterman cites an undated "Evaluation Form" that does not indicate by whom it was completed, but includes a checked box indicating that Peterman had difficulty remembering what she hears. (Tr. 268.) She also cites her own hearing testimony where she stated that her mother and ex-boyfriend help with her children. (Tr. 46-48.) Therefore, it is Peterman's position that the VE's testimony did not constitute substantial evidence because it was given in response to a hypothetical, which omitted the proposed limitations that she would be off task or need to be redirected to focus on tasks. Neither of these suggested limitations are supported by the scant evidence cited. Notably, the ALJ found Peterman was not credible and she has not challenged that finding. (Tr. 24, 26.) Finally, even if the undated Evaluation Form arguably supports the limitations suggested by Peterman, she has cited no law suggesting that failure to include limitations based on such a record constitutes grounds for a remand.

Therefore, Peterman's second assignment of error is also without merit.

**VII. Decision**

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: April 14, 2015